NOT DESIGNATED FOR PUBLICATION

No. 128,507

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

MAURICE ANTHONY MAHAN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Maurice Anthony Mahan was convicted after a jury trial of criminal threat and misdemeanor theft. He appeals, claiming (1) the district court erred by denying his request to modify the jury instruction for reasonable doubt, and (2) there was insufficient evidence to support his misdemeanor theft conviction. After reviewing the record and the parties' arguments, we find there was no error in the jury instruction, and there was sufficient evidence to support the misdemeanor conviction. We thus affirm his convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2023, Mahan, who is houseless, carried all his belongings in his own suitcase while visiting a Walmart store. Walmart employees saw Mahan put items in his suitcase and then exit the store. The employees confronted Mahan, and after being threatened by him, they stopped and called the police. The State subsequently charged Mahan for criminal threat and theft of Walmart's property.

In April 2024, the district court held a two-day trial for Mahan's charges. At the outset, the district court informed the jury of the State's burden of proof:

"It is your duty to presume that the defendant is not guilty of the crimes charged. The law requires the State to prove the defendant is guilty beyond a reasonable doubt. The burden is always on the State. The defendant is not required to prove innocence or to produce any evidence."

Considerable witness testimony and video evidence were admitted at trial. Three Walmart employees testified that around 5 p.m., a radio alert notified employees of a suspicious male with a suitcase in the menswear area and a possible theft. The employees began looking for the suspect.

One employee went to the menswear area and saw Mahan place various items into his personal suitcase. From different vantage points, all three employees observed Mahan pass all registers without making a purchase. One employee described Mahan's exit as "fast walking with some luggage" and "beelining" toward the exit "like a man on a mission." Another employee testified he saw Mahan exiting "[h]ead down in a fast manner."

As Mahan exited the store with his suitcase, one employee intercepted Mahan in the store's vestibule while the other two employees stood by and observed. During this interaction, Mahan made a verbal threat towards the employees, telling them to back away before something bad happens and that "he's going to shoot us essentially, that it's not worth being shot over."

Mahan then exited through the cart door. Two employees followed Mahan outside and asked him to stop. Mahan threatened one of the employees saying, "you better back the fuck up before your ass gets shot." After hearing this, the employees stopped pursuing Mahan and called the police.

Lawrence Police Officers Noah Pena and Parker Finch testified at trial. Officer Pena responded to the incident and interviewed the Walmart employees, while Officer Finch found Mahan and questioned him. Mahan denied all allegations.

Officer Pena left Walmart and joined Officer Finch, who still had Mahan detained, and together they searched Mahan's suitcase. Neither officer found a receipt for the items in Mahan's suitcase.

Officer Finch directed Officer Pena to return to Walmart and confirm which items in Mahan's suitcase were stolen. Employees claimed ownership of a bag of cold peppers, warm fried chicken in a plastic container with a Walmart logo, and a single can of cold Modelo beer. Officer Pena asked the three employees to retrieve footage of the theft. While attempts were made, employees were unable to retrieve the surveillance of the theft inside the store. The only video obtained showed Mahan exiting the store.

Madison Monson, a special investigator, testified there are video cameras throughout the store, facing down the aisles and in the main walkways. Monson also

reported that she delivered a business record subpoena to Walmart requesting surveillance footage but never received it.

After the parties rested, the district court conducted the jury instruction conference and proposed instructing the jury on the State's burden of proof using Pattern Instructions for Kansas (PIK) Criminal 4th 51.010 (2024 Supp.). Mahan objected to the proposed jury instruction due to its omission of the word "beyond" and requested to have that word included. The district court overruled Mahan's objection and denied the modification request.

Mahan defended himself under the theory that "mistake after mistake after mistake" left too many unanswered questions for the State to meet its "beyond a reasonable doubt" burden. He emphasized that no video of him within the general merchandise area of the store was found, no video evidence was pulled from outdoor cameras, and no evidence showed that this particular Walmart store owned the recovered property by verifying it with a comprehensive comparative inventorying or a barcode scan. In closing, Mahan's counsel stated the burden is on the State to prove "beyond a reasonable doubt" six times. In rebuttal, the prosecution also stated the standard was "beyond a reasonable doubt."

After closing, the jury received all jury instructions, including PIK Crim. 4th 51.010, informing jurors of the reasonable doubt burden of proof. The district court read all instructions aloud, with the jurors following along.

Ultimately, the jury found Mahan guilty of one count of criminal threat under K.S.A. 21-5415(a)(1), (c)(1), a level nine person felony, and one count of theft of property of a value less than $1,500 under K.S.A. 21-5801(a)(1), (b)(4), a nonperson misdemeanor. The district court sentenced Mahan to 16 months in prison for the criminal threat conviction and a concurrent 12-month jail term for the theft conviction.

4

Mahan timely appeals.

DISCUSSION

I.    *The district court did not err when it denied Mahan's request to modify the jury instruction on reasonable doubt.*

Mahan first renews his argument that the district court's instruction on the standard of proof was erroneous since it did not explicitly inform the jury that it must find Mahan guilty of the crimes charged "beyond" a reasonable doubt. In reviewing this argument, we are mindful of the three-step process used to analyze a jury instruction on appeal as set forth in *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). As Mahan points out, he did preserve the issue for appeal by objecting to the absence of the word "beyond" in the proposed jury instruction, which mirrors PIK Crim. 4th 51.010. We must determine whether the absence of this word was error.

To determine whether an error occurred, appellate courts "'consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record.'" *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). A legally appropriate jury instruction must fairly and accurately state the law and cover every essential element of the charged crime. *State v. Sinnard*, 318 Kan. 261, 291-92, 543 P.3d 525 (2024). "In all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime. This standard requires the prosecution to prove beyond a reasonable doubt each required element of a crime." K.S.A. 21-5108(a); see *Miller v. State*, 298 Kan. 921, 930, 318 P.3d 155 (2014).

Mahan argues that the instruction used to inform the jury of the State's burden of proof was not only error, but reversible error. The jury instruction failed to expressly state the prosecutor must prove a defendant's guilt *beyond* a reasonable doubt. Instead, the jury instruction at issue stated:

5

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have *a reasonable doubt* as to the truth of *any of the claims* required to be proved by the State, you *must* find the defendant *not guilty*. If you have *no* reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphases added.)

Mahan asserts the jury instructions violated his constitutional due process rights by leaving out the word "beyond." Because Mahan's argument is a constitutional argument, an appellate court exercises unlimited review. See *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007) (When the gravamen of a defendant's complaint concerns a constitutional due process challenge, an appellate court exercises unlimited review.).

A cornerstone of the criminal justice system is the presumption of innocence. The State must prove "'beyond a reasonable doubt . . . every fact necessary to constitute the crime'" that is charged. *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 643, 355 P.3d 667 (2015). The presumption of innocence and the State's high burden of proof is similarly captured by K.S.A. 21-5108. The phrase "beyond a reasonable doubt" is publicly familiar, but these exact words are not in the Constitution. Rather, the right is rooted in due process protections found in the Fifth and Fourteenth Amendments to the United States Constitution. 302 Kan. at 643. The purpose of the words are to "'safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.'" *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

The issue presented is not new. In 1850, when Chief Justice Shaw of the Massachusetts Supreme Judicial Court wrote the ground-breaking *Webster* burden of proof instruction, he recognized the right that every person is "'presumed to be innocent

6

until he is proved guilty.'" *Victor v. Nebraska*, 511 U.S. 1, 8, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994) (quoting *Commonwealth v. Webster*, 59 Mass. 295, 320, 5 Cush. 295 [1850]). Chief Justice Shaw also explained this right in a manner similar to the jury instruction at issue: "'If upon such proof there is reasonable doubt remaining, the accused is entitled to . . . acquittal.'" *Victor*, 511 U.S. at 8. And he also aptly observed, "'[W]hat is reasonable doubt? It is a term often used, probably pretty well understood, but not easily defined.'" 511 U.S. at 8.

Given the juxtaposition of the phrase "reasonable doubt" being readily understandable but not easily defined, it follows "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." 511 U.S. at 5. Rather, jury instructions overall must accurately convey the concept of reasonable doubt. 511 U.S. at 5 (citing *Holland v. United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 [1954]). As the *Webster* instruction and *Victor* case show, *when reasonable doubt exists*, the accused is entitled to acquittal. Why? Because the State must prove guilt *beyond* a reasonable doubt.

In Kansas, patterned jury instructions are the starting point for district courts. The Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Hollins*, 320 Kan. 240, 244, 564 P.3d 778 (2025). "'A district court may modify or add clarifications to PIK instructions *if the particular facts* in a given case warrant such a change.'" (Emphasis added.) 320 Kan. at 244. The jury instruction at issue involves articulating the presumption of innocence and the State's high burden of proof; that concept is not affected by the facts of the case. The district court used PIK Crim. 4th 51.010 in Mahan's case, rather than penning an independent version of the concept of reasonable doubt for the jurors.

7

Was it error for the district court to adhere to PIK and deny Mahan's request to add the word "beyond" to the jury instructions? We first turn to *State v. Curtis*, 217 Kan. 717, 538 P.2d 1383 (1975). Curtis argued that the court unduly restricted his counsel's closing arguments by not permitting him to use the words "*beyond* a reasonable doubt." (Emphasis added.) 217 Kan. 724. However, defense counsel was allowed to tell the jury that "the state had the burden of proving to its satisfaction that *no* reasonable doubt exists and that the jury could not convict if *a* reasonable doubt did exist in the minds of the jurors." (Emphases added). 217 Kan. at 724. The Kansas Supreme Court found no error, explaining, "We discern no practical difference" between the differing words used to describe the State's high burden of proof. 217 Kan. at 725. Specifically, the court held that "[t]elling the jury that it cannot convict if a reasonable doubt remains as to any of the claims made by the state conveys the same meaning as to burden of proof as requiring proof beyond a reasonable doubt." 217 Kan. at 725.

As Mahan observes, his argument involves written instructions rather than closing statements like *Curtis*, but the omission of the word "beyond," and the language used to describe the concept of reasonable doubt, are markedly similar. In Mahan's case, the district court declined to add the word "beyond" to the written instruction that read:

> "If you have *a* reasonable doubt as to the truth of *any of the claims* required to be proved by the State, you *must* find the defendant *not guilty*. If you have *no* reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." (Emphases added.)

Focusing on the language, *Curtis* indicates there is no practical difference between the instruction given to Mahan's jurors and requiring proof beyond a reasonable doubt. 217 Kan. at 725. Further, Mahan's defense counsel was not precluded from using the words "beyond a reasonable doubt" during closing arguments and in fact did so six times.

Next, we turn to *State v. Beasley*, 64 Kan. App. 2d 203, 547 P.3d 617, *rev. denied* 319 Kan. 834 (2024). Beasley claimed that the jury instructions lowered the State's high burden of proof by not using the word "beyond." Like the district court in Mahan's case, the district court in *Beasley* used PIK Crim. 51.010, albeit a 2020 version. The jurors were instructed: "'If you have *no* reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty.'" 64 Kan. App. 2d at 213. The panel in *Beasley* found no meaningful difference between proof "beyond a reasonable doubt" and the words used to instruct the jury. 64 Kan. App. 2d at 214. Specifically, the Beasley court held that "Beasley makes a distinction without a meaningful difference when he claims that 'no reasonable doubt' is a lower standard than 'beyond a reasonable doubt.'" 64 Kan. App. 2d at 214. Again, the jury instruction approved in *Beasley* was also used in this case.

Mahan also points to K.S.A. 21-5108(a), which states, "In all criminal proceedings the state has the burden to prove *beyond* a reasonable doubt that a defendant is guilty of a crime." (Emphasis added.) Further, the prosecution is required "to prove *beyond* a reasonable doubt *each required element of a crime*," and "[w]hen there is a reasonable doubt as to a defendant's guilt, the defendant shall be found not guilty." (Emphases added.) K.S.A. 21-5108(a), (b). As the principles in the statute and cases such as *Victor*, *Winship*, *Sinnard*, and *Mashaney* reflect, there are various acceptable ways to express the fact that the State must prove beyond a reasonable doubt each required element of a crime. One way is to state when reasonable doubt exists, "the defendant shall be found not guilty." K.S.A. 21-5108(b). Another is, "[i]f you have *a* reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you *must* find the defendant *not guilty*." (Emphases added.) PIK Crim. 4th 51.010. An examination of K.S.A. 21-5108 does not lead us to believe that the jury instruction in this case was in error. The statute simply reinforces the different ways that the State's high burden of proof can be articulated to a jury.

The jury instruction given to the jury in Mahan's case did not use the express terms "beyond a reasonable doubt," but the district court informed the jury of the State's burden of proof at the beginning of trial:

> "It is your duty to presume that the defendant is not guilty of the crimes charged. The law requires the State to prove the defendant is guilty *beyond a reasonable doubt*. The burden is always on the State. The defendant is not required to prove innocence or to produce any evidence." (Emphasis added.)

Mahan asserts that, even though combined with other instructions, the district court using PIK Crim. 4th 51.010 without including "beyond a reasonable doubt" still constituted reversible error. He asserts the jury was misled by PIK Crim. 4th 51.010. And citing *State v. Gallegos*, 286 Kan. 869, 873-74, 190 P.3d 226 (2008), he argues that there was a real possibility the jury would have rendered a different verdict if the error had not occurred.

The State counters that the test is whether the jury instructions, taken as a whole, fairly and accurately stated the law. *State v. Buck-Schrag*, 312 Kan. 540, 553, 477 P.2d 1013 (2020). The State's point is well taken. A jury instruction is not considered in isolation. 312 Kan. at 553. Further, the question is whether the instructions, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. *Victor*, 511 U.S. at 5. Here, the words included in the instruction were simply another way to relay "beyond a reasonable doubt" as established by *Curtis* and *Beasley*. In addition, the parties repeatedly used the words "beyond a reasonable doubt" in closing arguments to describe the State's burden of proof.

Mahan further asserts that the *Winship* standard was not satisfied in this case. See *Winship*, 397 U.S. 358; see also *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S. Ct. 2781, 61 L. Ed .2d 560 (1979); *Miller*, 298 Kan. 921, Syl. ¶ 6, 8. *Winship* is discussed in

10

*Victor* as safeguarding people from conviction "'except upon proof beyond a reasonable-doubt of *every fact necessary* to constitute the crime with which he is charged.'" (Emphasis added.) *Victor*, 511 U.S. at 28 (Blackmun, J., concurring in part and dissenting in part). This legal principle is also articulated by our Kansas Supreme Court in *Mashaney*. 302 Kan. at 643. Here, the instruction stated: "If you have *a* reasonable doubt as to the truth of *any of the claims required to be proved by the State*, you *must* find the defendant *not guilty*." (Emphases added.) Additional instructions set forth the elements of each crime. The *Winship* standard was satisfied in this case, as well as the requirements of K.S.A. 21-5108(a) that the State "prove beyond a reasonable doubt each required element of a crime."

Mahan provides a list of excerpts from other State's jury instructions. The list illustrates why our country's highest court has held that the Constitution does not require "any particular form of words be used in advising the jury of the government's burden of proof, so long as 'taken as a whole, the instructions correctly conve[y] the concept of reasonable doubt.'" *Victor*, 511 U.S. at 1.

We hold the jury instruction used by the district court was legally appropriate and there was no error. PIK Crim. 4th 51.010 correctly conveys the concept of reasonable doubt. The specific word "beyond" does not have to be used if the instruction appropriately conveys the State's high burden of proof. That was done in this case.

II.     *There was sufficient evidence to prove misdemeanor theft.*

Mahan also argues there was not sufficient evidence to support his conviction of misdemeanor theft under K.S.A. 21-5801. This issue is properly preserved for review because a criminal defendant need not challenge the sufficiency of the evidence at trial to preserve it for appeal. *State v. Pepper*, 317 Kan. 770, 776, 539 P.3d 203 (2023).

11

Our review under these circumstances is well established. "'[W]e review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). We are precluded from reweighing the evidence, resolving conflicts in the evidence, or determining the credibility of witnesses. 313 Kan. at 192.

Mahan asserts that no one saw him steal the food from Walmart and that there was no video from inside the store recording him stealing the food. He argues that the State did not prove beyond a reasonable doubt that he was not the rightful owner of the food found in his suitcase.

The State counters that evidence was presented showing each item was originally Walmart property. The chicken was in a container that bore Walmart's logo. An employee identified the chicken, beer, and peppers as belonging to Walmart. Further, when law enforcement found the items in Mahan's suitcase shortly after his departure from Walmart, the temperature of the items indicated the food was recently taken. The day in question was warm. The recovered cooked chicken was warm, and the beer and peppers were still cold. Mahan had no receipt for the items.

While there was no in-store video, an employee identified Mahan as a "suspicious" person who had put something in his luggage while inside the store. Three employees saw Mahan bypass Walmart's open checkout lanes and exit the store without paying. Mahan exited the store in a suspicious "head down," "man on a mission" manner. When the employees approached Mahan about returning any unpaid merchandise, he threatened them with violence and told them to back off and to let him go.

In Mahan's case, jurors were given instruction No. 10, which stated:

12

"The defendant is charged with theft. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Walmart was the owner of the property.

"2. The defendant obtained unauthorized control over the property.

"3. The defendant intended to deprive Walmart permanently of the use or benefit of the property.

"4. The value of the property was less than $1,500.

"5. This act occurred on or about the 21st day of June, 2023, in Douglas County, Kansas.

"The State must prove that the defendant committed the crime intentionally.

" A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

Mahan asserts that the State failed to prove the property belonged to Walmart rather than to him. In that regard, our role is to "'only look to the evidence in favor of the verdict to determine whether the essential elements of a charge are sustained.'" *State v. Barnes*, 320 Kan. 147, 177, 563 P.3d 1255 (2025). Further, "[i]t is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

The issue is whether Mahan obtained unauthorized control over Walmart property. There was sufficient evidence presented at trial to find Mahan guilty of theft: the items found in his suitcase were Walmart property; he left Walmart without paying for the items; he threatened Walmart employees who tried to stop him from leaving without paying; no receipt was found showing he purchased the items; and based upon the temperature of the recovered items, the food was recently taken from the store.

On appeal, this court need not rule out every other reasonable possibility, as Mahan suggests. See *Barnes*, 320 Kan. at 177-78. "'[W]e review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found

13

the defendant guilty beyond a reasonable doubt.'" *Aguirre*, 313 Kan. at 209. We find a rational factfinder could have found beyond a reasonable doubt that Mahan took food from Walmart without paying for it.

Affirmed.